UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN M. ROUSE

          Plaintiff,

v.                                Case No. 8:11-cv-1391-T-30AEP

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his/her claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend the Commissioner's decision be affirmed.

## I.

### A.     Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI. *See* Tr. 71-73, 696-99. The Commissioner denied his claims both initially and upon reconsideration (Tr. 54-63). Plaintiff then requested an administrative hearing (Tr. 52). Per his request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 63A, 295-303, 304-16). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying

Plaintiff's claims for benefits (Tr. 15-25). Plaintiff then requested review by the Appeals Council, which the Appeals Council denied (Tr. 4-14). Plaintiff later filed a civil action in federal district court. *See Rouse v. Astrue*, No. 8:08-cv-2281-T-23TBM (M.D. Fla.). Upon review, the district court reversed and remanded the case back to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). *Rouse v. Astrue*, No. 8:08-cv-2281-T-23TBM, 2010 WL 457320 (M.D. Fla. Feb. 4, 2010).

On remand, the ALJ conducted a supplemental hearing at which Plaintiff appeared and testified (Tr. 717-56). The ALJ then issued another unfavorable decision denying Plaintiff's claims for benefits (Tr. 332-45). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 317-19). Following that, Plaintiff timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born on April 25, 1968, claims disability beginning September 1, 2003 (Tr. 71, 90, 307). He has an eleventh grade education (Tr. 81, 88, 729). His past relevant work experience includes construction work as a mason (Tr. 76, 85, 93, 750). He alleges disability due to a leg injury, hip pain, and arthritis in his arms, hands, and back (Tr. 84).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe combination of impairments: history of remote trauma to the left lower extremity requiring surgery for internal fixation and subsequently for hardware removal and causing deformity of the leg and leg length discrepancy, history of osteomyelitis of the left

2

lower extremity, lumbar degenerative disc disease, and osteoarthritis of the left wrist (Tr. 337-39).

Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1 (Tr. 339-40).   The ALJ then concluded that Plaintiff

retained the residual functional capacity ("RFC") to perform a wide range of sedentary work, with

the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; could walk and

stand for at least 2 hours and sit for 6 hours in an 8-hour workday; could occasionally climb stairs

and ramps, balance, kneel, stoop, crouch, and crawl; needed to avoid ladders, ropes, and scaffolds

and unprotected heights, hazardous machinery, and excessive or concentrated vibration; could

hear, understand, remember, and carry out simple routine work instructions; and could interact

appropriately with co-workers, supervisors, and the general public (Tr. 340-44).  The ALJ further

found that Plaintiff had no manipulative, visual, or communicative limitations (*id.*).   In

formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined

that, although the evidence established the presence of underlying impairments that reasonably

could be expected to produce the symptoms alleged, Plaintiff's statements as to the frequency,

intensity, and duration of his symptoms were inconsistent with the evidence of record and could

not be fully credited (Tr. 340).

Considering his noted impairments and the assessment of a vocational expert ("VE"),

however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 344).  Given

Plaintiff's background, RFC, and the testimony of the VE, the ALJ found that Plaintiff could

perform other jobs existing in significant numbers in the national economy, including a small

3

products assembler, poly pack/heat sealer, and final inspector (Tr. 345). Accordingly, the ALJ found Plaintiff not disabled (Tr. 345).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior

4

work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct

legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues here that the ALJ erred by failing to (1) find Plaintiff suffered from a severe mental impairment; (2) accord substantial weight to Plaintiff's treating and examining sources while improperly affording significant weight to state agency medical consultants; (3) make a proper credibility finding as to Plaintiff's testimony, his subjective complaints of pain, and his mother's testimony; and (4) include all of Plaintiff's limitations in the RFC finding.  For the reasons that follow, I find that the ALJ applied the correct legal standards and that the decision is supported by substantial evidence.

### A.      Severe Impairment

Plaintiff argues that the ALJ erred by failing to find Plaintiff suffered from a severe mental impairment.  At step two of the sequential analysis, a claimant must show he suffers from an impairment or combination of impairments that significantly limits his physical and mental ability to do basic work activities, namely: walking, standing, sitting, pushing, reaching, seeing, hearing, speaking, understanding and carrying out of simple instructions, use of judgment, and responding appropriately in the workplace.  *See* 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921.  The finding of *any* severe impairment whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe is enough to satisfy step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010).  A claimant's impairment will not be

6

considered severe only if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)).  The severity of a medically ascertained disability must be measured, therefore, "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The claimant bears the burden of showing he has a severe impairment. *McDaniel*, 800 F.2d at 1031.

As part of the process for evaluating the severity of mental impairments, the Commissioner must rate the degree of functional limitations resulting from the mental impairment based on the extent to which the impairment interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. §§ 404.1520a(c)(2), 416.921a(c)(2).  In doing so, the Commissioner considers four broad functional areas in which the degree of functional limitations are rated, including (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R.  §§ 404.1520a(c)(3), 416.921a(c)(3).  If the degree of limitation in the first three areas are either "none" or "mild" and if a finding of "none" exists in the fourth area, generally a conclusion that the mental impairment is not severe is warranted.  20 C.F.R. §§ 404.1520a(d)(1), 416.921a(d)(1).

In rendering the decision, the ALJ explicitly found that Plaintiff's depression, anxiety, and personality traits did not cause more than minimal limitations in his ability to perform basic

7

work-related mental activities and were therefore not severe (Tr. 338).  As the ALJ explained,

Plaintiff had only mild limitations in the first three functional areas and had experienced no

episodes of decompensation of extended duration (Tr. 338-39).  In discussing this finding, the

ALJ relied upon the medical evidence of record and Plaintiff's own testimony (*id.*).  Namely, the

ALJ stated that Plaintiff provided no treatment records relating to mental health treatment prior

to October 2008 and the records from Plaintiff's mental health practitioners indicated Plaintiff

did well with medication, Plaintiff was found to have a normal mental status, and Plaintiff's

depression, mood irritability, anxiety, and bipolar disorder were under control (Tr. 338, 634-50).

The ALJ noted that the record also indicated that Plaintiff had stopped working due to physical

limitations rather than mental limitations and that Plaintiff reported that he was able to follow

instructions and get along with other people (Tr. 339).  Further, at the hearing, Plaintiff did not

identify any significant work-related mental limitations (Tr. 339, 719-37).  As such, the ALJ

properly found that Plaintiff's mental impairments were not severe.

Even assuming *arguendo* that the ALJ could have found that Plaintiff's mental

impairments constituted severe impairments at step two, the ALJ's failure to do so was harmless

because the finding of *any* severe impairment is enough to meet the demands of step two.

*Jamison,* 814 F.2d at 588; *Heatly,* 382 Fed. App'x at 824-25.  Indeed, step two acts as a filter.

*Jamison,* 814 F.2d at 588.  When a severe impairment is shown, regardless of whether it is a

single severe impairment or a combination of impairments that together qualify as severe, the

requirement at step two is satisfied.  *Id.*  In this instance, the ALJ found at step two that Plaintiff

had the severe impairments of a history of remote trauma to the left lower extremity requiring

surgery for internal fixation and subsequently for hardware removal and causing deformity of the leg and leg length discrepancy, history of osteomyelitis of the left lower extremity, lumbar degenerative disc disease, and osteoarthritis of the left wrist. The ALJ then continued on in the sequential analysis and later considered the credible limitations associated with Plaintiff's impairments when determining Plaintiff's RFC. Accordingly, the ALJ applied the appropriate legal standard at step two and his decision is supported by substantial evidence.

### B.    Medical Opinions

Plaintiff next contends that the ALJ erred by improperly rejecting the medical opinions of Dr. Bharminder Bedi, Dr. Kimberly Smith, and Dr. Bhupendra Gupta and instead affording "persuasive weight" to the opinions of the state agency medical consultants. In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight

that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when it supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### i.    Dr. Bedi

Plaintiff first met with Dr. Bedi in October 2008 wherein Plaintiff claimed that he did not know why he was referred to Dr. Bedi but also stated that he easily loses his temper, gets angry, gets aggravated, and gets upset (Tr. 649).  Plaintiff reported that he had not been able to work for a long time due to his physical impairments but was turned down for disability benefits so was very discouraged, a bit anxious, and somewhat depressed as a result (*id.*).  Upon examination, Dr. Bedi diagnosed Plaintiff with adjustment disorder with mixed emotions, assigned Plaintiff a GAF score around 55 to 58, and prescribed him medication for his anxiety and mild depression (Tr. 650).  A few weeks later, Plaintiff again reported that he could not work, was very frustrated with the state as he had not been approved for disability, and felt discouraged, sad, emotional, anxious, and stressed out (Tr. 648).  Dr. Bedi opined that Plaintiff possibly had mood irritability and had adjustment issues due to his medical and financial stress (*id.*).  Plaintiff did not see Dr. Bedi again until December 2008 at which point Plaintiff felt a bit overwhelmed

by the health problems of family members (Tr. 647). Dr. Bedi noted that Plaintiff wanted extra Xanax, but Dr. Bedi did not see any justification for that and did not feel comfortable giving him any more medications than already prescribed (*id.*).

Following that, Dr. Bedi met with Plaintiff in February 2009 (Tr. 645-46). At that time, Dr. Bedi noted that Plaintiff reported that he could not sleep and therefore requested sleeping pills (Tr. 645). Dr. Bedi refused to prescribe Plaintiff sleeping pills as Plaintiff was already taking Xanax and Vicodin and noted that Plaintiff had a history of alcohol abuse so had to watch Plaintiff's medications (*id.*). Notably, Dr. Bedi stated that Plaintiff was not getting angry or moody and opined that Plaintiff most likely just wanted some extra Valium along with the Xanax, for which there was no justification (Tr. 646). At Plaintiff's March 2009 appointment, Dr. Bedi noted that Plaintiff's medications helped with racing thoughts and mood irritability and calmed him down (Tr. 644). Dr. Bedi further observed that Plaintiff was doing better than before, was alert and cooperative, and was not getting angry, moody, hyper, or impulsive (*id.*). In April 2009, Dr. Bedi found that Plaintiff was not having a lot of mood irritability but admitted that he had a history of mood swings (Tr. 643). Accordingly, Dr. Bedi determined that a history of bipolar disorder could not be ruled out (*id.*).

In May 2009, Dr. Bedi again observed that Plaintiff was doing well with his mood irritability and anxiety but that Plaintiff was mostly concerned with the denial of Social Security benefits because Plaintiff believed he could not work due to his physical impairments (Tr. 642). Dr. Bedi noted that Plaintiff was anxious because of the disability benefits situation but that Plaintiff was not delusional, psychotic, suicidal, or manic and that Plaintiff had mostly "medical

issues in nature" (*id.*).  Dr. Bedi further noted that Plaintiff was not losing his temper, getting angry or getting aggravated as he had in the past and, accordingly, Dr. Bedi kept Plaintiff on his medications (*id.*).  Similarly, in June 2009, Dr. Bedi found Plaintiff "doing well from a psych point of view" and, although a bit anxious, not having mood swings or getting moody, angry or frustrated (Tr. 641).  Dr. Bedi reported that Plaintiff was doing well on his medications and in general, his insight was adequate, his judgment and logic were intact, and hd was not delusional, psychotic, suicidal, or manic (*id.*).  Subsequently, in August 2009, Dr. Bedi reported that Plaintiff no longer got angry, aggravated, or upset easily and got along well with people, did work here and there to help his father in the workshop, was not depressed, did not get anxious, mostly has medical issues, had good insight, did well on his medication, did not act out, had no agitation, and had no mood swings (Tr. 640).  Again in September 2009, Dr. Bedi found Plaintiff doing fairly well except for some feelings of stress and anxiety due to the death of a nephew (Tr. 639).  During that appointment, Plaintiff reported that he was going to help his parents fix up their house for a month or two because the house was flooded (*id.*).  Dr. Bedi found Plaintiff alert and cooperative, not manic or suicidal, and assigned Plaintiff a GAF score of 60 (*id.*).

At an appointment in November 2009, Dr. Bedi noted that Plaintiff discussed his denial of disability benefits and was upset that he was turned down for those benefits (Tr. 637).  Dr. Bedi found that Plaintiff easily became angry but that his medication was helping with this problem (*id.*).  As the treatment note indicates, Dr. Bedi suggested Plaintiff reapply for disability and have his doctor give him a strong letter that he cannot work because he was not a candidate for any gainful employment (*id.*).  Besides that, Dr. Bedi found Plaintiff alert, cooperative, and not manic

or suicidal but possibly with bipolar disorder and numerous medical issues (Tr. 638). Subsequently, in December 2009, Dr. Bedi reported that Plaintiff no longer got angry, moody, aggravated, or frustrated and that his bipolar disorder was under control (Tr. 636).  Dr. Bedi noted Plaintiff's complaints regarding his physical impairments and opined that Plaintiff's main issues appear to be medical in nature (*id.*).  Dr. Bedi assigned Plaintiff a GAF score around 58-60 (*id.*). In January 2010, Dr. Bedi reported that Plaintiff used to be very aggressive, temperamental, moody, and aggravated but was doing much better and was calm, was cooperative, had a stable mood, and was not angry, frustrated, or hyper (Tr. 635).  Dr. Bedi further noted that Plaintiff did well on his medication and that Plaintiff would be going to Louisiana for a few weeks to do some floor work for his cousin (*id.*).  Following that, in March 2010, Dr. Bedi noted that Plaintiff was continuing to do well and his anxiety, panic, and mood swings were controlled with medication (Tr. 634).

In rendering his decision, the ALJ considered all of Dr. Bedi's findings but afforded little weight to the moderate range of GAF scores assessed by Dr. Bedi because the ALJ found the scores inconsistent with Dr. Bedi's objective examination findings of only mild depression and some stress due to medical and financial issues, Plaintiff's reports of doing well on medication, and Plaintiff's activities of daily living (Tr. 338).  As the ALJ correctly found, Dr. Bedi's treatment notes do not indicate any significant abnormal mental status findings on examination and do not support a moderate range of GAF scores (Tr. 339).  Indeed, as discussed in great detail above, Dr. Bedi consistently found Plaintiff doing well with his symptoms controlled by his medications and repeatedly found that Plaintiff's main medical issues were not due to his mental

13

impairments.  The ALJ therefore appropriately considered Dr. Bedi's opinion in determining Plaintiff was not disabled and properly afforded little weight to the GAF scores assessed by Dr. Bedi and the decision is supported by substantial evidence.

### ii.      Dr. Smith

Dr. Smith treated Plaintiff from March through October 2007 for reported leg pain and reported seizures (Tr. 673-84).  In April 2007, Dr. Smith had completed a form regarding Plaintiff's physical ability to perform work-related activities in which she opined that Plaintiff could lift less than ten pounds, stand and walk less than two hours in an eight-hour workday, sit less than two hours in an eight-hour workday, sit for ten minutes at a time, stand for ten minutes at a time, needed a sit-stand option, needed to lie down at unpredictable intervals for three-fourths of the workday, could not push or pull, would be absent from work more than three times per month, and could occasionally twist but never stoop, crouch, or climb (Tr. 292-94).  As Dr. Smith's treatment notes indicate, however, she did not perform any objective tests or make any other findings regarding Plaintiff's impairments or pain (*id.*).  She simply noted Plaintiff's history of impairments and recorded Plaintiff's subjective complaints.

Accordingly, the ALJ afforded little weight to Dr. Smith's opinion regarding Plaintiff's limitations and articulated adequate reasons for doing so (Tr. 342).  Namely, as the ALJ noted, Dr. Smith's treatment notes indicated no significant findings upon examination and her opinions were inconsistent and appeared to be based only upon Plaintiff's subjective complaints (*id.*).  Further, the ALJ found that there were no findings to support Dr. Smith's conclusions regarding Plaintiff's limitations as to lifting, walking, standing, sitting, and postural and manipulative

14

activities (*id.*).  Indeed, Dr. Brian Zilka performed a consultative examination in April 2009 and found that Plaintiff had intact range of motion and muscle strength in his hands and wrists, intact range of motion in his hip, the ability to walk short distances without use of a cane but could not bend his left knee or ankle, difficulty walking on his heels but the ability to walk on his toes a short distance, intact range of motion throughout his cervical and lumbar spine, and an intact neurovascular exam (Tr. 490-97).  Given the foregoing, the ALJ properly discounted Dr. Smith's opinion, articulated proper reasons for doing so, and the decision is supported by substantial evidence.

### iii.    Dr. Gupta

Plaintiff met with Dr. Gupta in June 2004 for a consultative examination (Tr. 162-69). Upon examination, Dr. Gupta found had no muscle atrophy, was grossly dexterous, sat with ease, stood with ease, walked with ease and could ambulate without assistive devices, had a gate that was antalgic without corrective shoes, could walk about one hundred and twenty feet without his corrective shoes, was able to undress and dress himself, lean forward and untie and tie his shoelaces, and open and close a door by turning the knobs himself (Tr. 165).  Dr. Gupta therefore assessed Plaintiff as having lumbar pain with no neurological deficit, open sinuses with drainage on his left lower leg indicating smoldering wound injection and most likely osteomyelitis, knee strength of 5/5 in all major groups on the right side and 0/5 in all major groups on the left side as it was fused, and ankle strength of 5/5 in all major groups on the right side and 2/5 in all major groups on the left side as it was ankylosed (Tr. 166).

Although not in his report, a report of contact from June 2004 indicated that a call was

15

made to Dr. Gupta seeking clarification for his statement that Plaintiff could walk and stand for only fifteen minutes in an eight-hour workday and requested  (Tr. 107, 340-41).  That opinion does not appear anywhere in Dr. Gupta's report, however (Tr. 162-69).  Notwithstanding, the ALJ did not afford that opinion significant weight as it was made based upon only one examination of Plaintiff and, at the time of the examination, Plaintiff had a recent injury and osteomyelitis, which required surgical treatment (Tr. 341).  Further, the ALJ found that subsequent evidence of record showed that Plaintiff received the appropriate treatment, improved, healed within four months of Dr. Gupta's examination of Plaintiff, and did not require further medical treatment until 2007 (*id.*).  Upon review of the record, the ALJ afforded the proper weight to Dr. Gupta's opinion as to Plaintiff's limitations given Dr. Gupta's findings upon examination, Dr. Gupta's single examination of Plaintiff, and the other evidence of record.  Furthermore, the ALJ articulated adequate reasons for not affording significant weight to Dr. Gupta's opinion and substantial evidence supports the decision.

### iv.      State Agency Medical Consultants

Plaintiff also contends in cursory fashion that the ALJ erred "by failing to accord appropriate weight to the opinion of [Plaintiff's] treating physicians, Dr. Bedi and Dr. Smith, and examining physician Dr. Gupta, and instead according persuasive weight to the opinions of non-treating, non-examining reviewers, the decision to [sic] subject to reversal or to remand" (Dkt. No. 14 at 9).  Plaintiff fails, however, to discuss any opinions from the state agency medical consultants he believes were improperly relied upon by the ALJ or any reasons why it was improper for the ALJ to rely upon such opinions.  Indeed, in reaching his conclusion that Plaintiff

16

was not disabled, the ALJ considered the opinions of the state agency medical consultants from

both the initial and reconsideration levels (Tr. 341, 343).  As the regulations provide, the ALJ

must consider the findings and opinions of non-examining state agency medical consultants, who

are considered experts in the context of Social Security disability evaluation.  20 C.F.R. §§

404.1527(e)(2)(i), 416.927(e)(2)(i).  Here, as the ALJ noted, the state agency medical consultants

consistently found Plaintiff able to stand and walk for at least two hours in an eight-hour

workday, lift twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-

hour workday, and occasionally perform postural activities except no ladders, ropes, scaffolds,

hazards, or vibrations (Tr. 341, 343).  The ALJ appropriately afforded these opinions substantial

weight as all of the assessments were consistent and supported by the objective medical evidence.

 Accordingly, the ALJ applied the appropriate legal standards and the decision is supported by

substantial evidence.

### C.    Subjective Complaints

In social security disability cases, credibility determinations fall within the province of

the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the ALJ makes

credibility determinations regarding Plaintiff's subjective complaints of pain and must provide

specific reasons for his credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991);

Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).  To establish a disability based

on testimony of pain and other symptoms, the claimant must show evidence of an underlying

medical condition and either (1) objective medical evidence confirming the severity of the alleged

symptoms or (2) that the objectively determined medical condition can reasonably be expected

to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225.

Plaintiff argues here that the ALJ erred by basing the credibility finding on Plaintiff's activities of daily living. According to Plaintiff, those activities are not dispositive of disability and are an improper basis upon which to discredit Plaintiff's testimony and subjective complaints. Contrary to Plaintiff's assertion, however, an ALJ may consider a claimant's activities of daily living when discounting subjective complaints of pain. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Although an ALJ cannot make a finding of non-disability at step one based on daily activities, he may consider a claimant's daily activities at the fourth step of the evaluation process to determine RFC and ability to perform past relevant work and to discredit subjective complaints. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Accordingly, the ALJ appropriately considered Plaintiff's activities of daily living in discrediting Plaintiff's subjective complaints, his testimony, and the testimony of his mother.

As the evidence of record indicates, Plaintiff's activities of daily living belie his assertion of disabling pain and limitations. Indeed, Plaintiff testified that he had constant, extreme pain in his lower back and hip every day, could only sit for about twenty minutes at a time, could only walk fifty feet before having to stop, could only stand for twenty minutes at the most, remained in bed seventy percent of the day, had problems with numbness and tingling in his arms and hands, had problems with his arms and hands falling asleep after ten minutes in the

same position, and had to elevate his leg while sitting (Tr. 728-36).  Plaintiff's mother testified

that Plaintiff spent most of his day in bed due to his back problem, leg problem, and depression

and spent about seventy percent of his time in bed, had to keep his leg extended while sitting, did

not leave the house unless his parents took him somewhere, only walked from his bedroom to the

kitchen or to the restroom, stumbled frequently, and could not go back to work because of all of

the medications he took for his impairments (Tr. 739-47).  In stark contrast to Plaintiff's

subjective complaints and the testimony of both Plaintiff and his mother, Plaintiff reported to Dr.

Bedi that he planned to fix up his parents' home for a month or two after a flood, helped his

cousin lay flooring for a few weeks, and helped his father in the workshop here and there (Tr.

635, 639, 640).  These activities indicate Plaintiff was capable of performing at least sedentary

to light work activities, which weighs heavily against a finding of disability.  As such, the ALJ

properly considered Plaintiff's activities of daily living in discrediting Plaintiff's subjective

complaints and the testimony.

        Furthermore, the ALJ did not rely solely upon Plaintiff's activities of daily living in

discrediting Plaintiff's subjective complaints or find those activities dispositive of Plaintiff's

ability to work.  In making his determination, the ALJ discussed the objective medical evidence

and medical opinions, including the evidence relating to Plaintiff's mental and physical

impairments (Tr. 340-44).  Although Plaintiff had been diagnosed with various impairments over

the course of his medical treatment, diagnosis of an impairment, standing alone, is not sufficient

to establish disability; rather, "the record must contain corroborative medical evidence supported

by clinical and laboratory findings."  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991)

19

(citations omitted).  As the ALJ discussed in great detail, the medical evidence did not support a finding of disability.  Accordingly, the ALJ applied the proper legal standards in making a credibility determination and his decision is supported by substantial evidence.

### D.    RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§ 404.1545(a), 416.945(a).   Here, given Plaintiff's credible limitations, the ALJ determined Plaintiff retained the RFC to perform a wide range of sedentary work with a few noted limitations (Tr. 340-44).  Specifically, the ALJ found that Plaintiff had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; could walk and stand for at least 2 hours and sit for 6 hours in an 8-hour workday; could occasionally climb stairs and ramps, balance, kneel, stoop, crouch, and crawl; should avoid ladders, ropes, and scaffolds and unprotected heights, hazardous machinery, and excessive or concentrated vibration; could hear, understand, remember, and carry out simple routine work instructions; and could interact appropriately with co-workers, supervisors, and the general public (Tr. 340-44).  The ALJ also found that Plaintiff had no manipulative, visual, or communicative limitations.

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the RFC finding. In doing so, Plaintiff points to the limitations set forth by Dr. Smith and Dr. Bedi

regarding Plaintiff's ability to stand, sit, and lift up to twenty pounds.  As explained more fully above, however, the ALJ properly discounted those opinions as the opinions were not supported by and were inconsistent with the evidence of record.  The ALJ accordingly omitted those limitations from Plaintiff's RFC.  Instead, after considering the objective medical evidence, Plaintiff's subjective complaints, and the testimony, the ALJ determined Plaintiff's credible limitations and incorporated those limitations that were supported by the record into the RFC finding (Tr. 340-44).  The ALJ therefore applied the appropriate legal standards, and the decision is supported by substantial evidence.

## IV.

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1.  The decision of the Commissioner be affirmed.

IT IS SO REPORTED in Tampa, Florida, on this 10th day of August, 2012.


ANTHONY E. PORCELLI
United States Magistrate Judge

21

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).


Copies furnished to:

Honorable James S. Moody, Jr.

Counsel of Record